**BARACUDA INTERNATIONAL CORPORATION, Plaintiff,**

v.

**HOFFINGER INDUSTRIES, INC., Defendant.**

**No. CIV. A. 1:96–CV–2090–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 10, 1998.

---

Caroline W. Spangenberg, Dean Wall Russell, Mitchell Gaines Stockwell, Kilpatrick Stockton, Atlanta, GA, for Baracuda International Corporation, Plaintiff.

George Marshall Thomas, Thomas Kayden Horstemeyer & Risley, Atlanta, GA, for Hoffinger Industries, Inc., Defendant.

## ORDER

THRASH, District Judge.

This is a patent infringement action concerning swimming pool vacuum cleaners. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. No. 19] and the Plaintiff's Motion for Partial Summary Judgment [Doc. No. 21].

## I. BACKGROUND

Plaintiff Baracuda International Corporation owns the following patents relating to automatic swimming pool vacuum cleaners: (1) U.S. Patent No. 4,133,068 (the " '068 patent") and (2) U.S. Patent No. 5,014,382 (the " '382 patent"). The '068 patent was issued to Helmut Hoffman on January 9, 1979. It states that the invention "comprises a simple automatic operating apparatus for cleaning swimming pools in a stepwise movement over the pool walls." (Doc. No. 19, Exh. A). Claim 1 of this patent describes an apparatus for cleaning submerged surfaces comprising:

a. balanced operating head having an inlet and an outlet defining respective inlet and outlet axes, the outlet adapted to be swivelably connected to a longitudinally resilient and flexible suction hose, the inlet axis being inclined at an angle of between thirty degrees to that of the outlet axis, a pair of passages through the head adapted to alternately close said passages, a baffle plate in the head between the inlet and valve to cause one of the passages to be more restricted and less direct between inlet and outlet than the other and the valve shaped so that liquid flow through the passages will cause automatic oscilla-

tion thereof between termination positions in each of which one of the passages through the head is closed.

(Doc. No. 19, Defendant's Exh. A).

The '382 patent was issued to Dieter Kallenbach on May 14, 1991. It describes a swimming pool cleaner comprising:

(a) a forwardly inclined body having a flow passage therethrough; (b) an inlet foot having a water inlet, the inlet foot being attached to the body and connected to the flow passage and when in use, is proximate to a surface to be cleaned; (c) a flexible disc surrounding the water inlet and rotatably connected to the inlet foot and having a peripheral edge; and (d) a stop for preventing upward flexing of the peripheral edge beyond a predetermined amount located forward of the body and above and substantially inward of the peripheral edge.

(Doc. No. 19, Defendant's Exh. B). Claim 2 of this patent, which is dependent on Claim 1, describes the stop as incorporating a weight located on a support member attached to the body. (*Id.*).

Kreepy Krauly U.S.A., Inc. ("Kreepy Krauly") owned the following three patents relating to automatic swimming pool vacuum cleaners: (1) U.S. Patent No. 4,023,227 (the " '227 patent"); (2) U.S. Patent No. 4,156,948 (the " '948 patent"); and (3) U.S. Patent No. 4,193,156 (the " '156 patent"). (Doc. No. 19, Defendant's Exhs. C, D and E). These three patents are prior art to the Plaintiff's '382 patent. The '227 patent has expired. The Defendant is licensed by Kreepy Krauly to practice the '156 patent.

The Defendant sells two swimming cleaners called the Glider and the Cruiser cleaners. It is undisputed that the Cruiser cleaner includes (1) a forwardly inclined passage with a flow passage, (2) an inlet foot, (3) a flexible disc surrounding the water inlet and rotatably connected to the inlet foot, and (4) a weight located on a support member attached to the body. Except for the shape of their respective flexible discs, the Cruiser cleaner uses the same structure as the Glider cleaner. The Cruiser cleaner also works the same way and employs the same principles of operation as the Glider cleaner.

In 1996, the Plaintiff filed this patent infringement action against the Defendant claiming that the Defendant's swimming pool cleaners infringe the '382 patent and the '068 patent. It claims that enhanced damages are warranted because the Defendant willfully and deliberately infringed the subject patents. In its Answer, the Defendant alleges that the '382 patent and the '068 patent are invalid for failure to meet the conditions for patentability set forth in 35 U.S.C. §§ 102 and 103, and for failure to comply with 35 U.S.C. § 112.

The Defendant filed a Motion for Summary Judgment [Doc. No. 10], contending that its Cruiser and Glider cleaners do not literally infringe either the '068 patent or the '382 patent. With regard to the '068 patent, the Defendant contends that its products do not have as a necessary element of Claim 1 a "baffle plate in the head between the inlet and valve to cause one of the passages to be more restricted and less direct between inlet and outlet than the other." With regard to the '382 patent, the Defendant contends that its products do not have as a necessary element of Claim 1 a "stop for preventing upward flexing of the peripheral edge [of the flexible disc] beyond a predetermined amount located forward of the body and above and substantially inward of the peripheral edge." The Defendant further contends that there is no infringement under the doctrine of equivalents because the alleged equivalent features of the Defendant's products practice the prior art and cannot infringe the subject patents.

The Plaintiff filed a Motion for Partial Summary Judgment against the Defendant, contending that the Cruiser and Glider cleaners infringe Claims 1 and 2 of the '382 patent either literally or under the doctrine of equivalents. The Plaintiff further contends that the Defendant's infringement of the '382 patent was willful. Finally, the Plaintiff contends that the Defendant cannot meet its heavy burden of showing that the '382 patent is invalid given the presumption of validity.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions, and affida-

vits submitted by the parties show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence and any inferences that may be drawn should be viewed in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. *INFRINGEMENT*

■ A patent is a government grant of rights that permits the patentee to exclude others from making, using, or selling the invention as claimed. 35 U.S.C. § 154. A determination of patent infringement requires a two-step analysis. Under the first step, claims within the patent must be construed. *Wright Medical Technology, Inc. v. Osteonics Corp.,* 122 F.3d 1440, 1443 (Fed. Cir.1997). Claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claims can either be independent or dependent. An independent claim does not refer to any other claim of the patent and is read separately to determine the scope of the patent. *Johns Hopkins University v. Cellpro,* 894 F.Supp. 819, 832 (D.Del.1995). A dependent claim refers to at least one other claim and includes all of the limitations of the independent claim to which the dependent claim refers. *Id.* A dependent claim cannot be infringed if the independent claim on which it depends is not infringed. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9 (Fed.Cir.1989).

■ To ascertain the meaning of or construe patent claims, the court may consult both intrinsic and extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). Intrinsic evidence consists of the patent itself, the claim, the specification, and the prosecution history. Extrinsic evidence consists of evidence that is external to the patent and file history including expert testimony, inventor testimony, dictionaries, technical treatises, and prior art not cited in the prosecution history. Under established rules of claim construction, the court first considers the intrinsic evidence of record beginning with "the words of the claims themselves, both asserted and unasserted, to define the scope of the patent invention." These words are generally given their customary and ordinary meaning. However, a patentee may be his own lexicographer provided his special definitions are clearly delineated in the specification or file history. Next, the court should review the patent specification to determine whether the inventor has employed any term or words inconsistently with their ordinary meaning. The specification acts as a dictionary in defining terms used in the claim and is therefore highly relevant to claim construction analysis. *Id.* "Claims must be read in view of the specifications, of which they are a part." *Markman,* 52 F.3d at 979. The patent specification must contain a description of the best mode or preferred embodiment for carrying out the invention. However, the patent claims may be broader in scope than preferred embodiment. *SRI International v. Matsushita Elec. Corp. Of America,* 775 F.2d 1107, 1121–22 (Fed.Cir.1985).

■ The court may consider the prosecution history of the patent. *Vitronics,* 90 F.3d at 1582. The prosecution history includes "the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Id.* The court may also examine the prior art cited within the prosecution history to gain a general idea of what the claims do not cover. *Id.* at 1583. While the prosecution history can and should be used to construe claim language, it cannot "enlarge, diminish, or vary" the limitations in

the claims. *Markman,* 52 F.3d at 980. Extrinsic evidence, such as expert testimony and technical treatises, may also be used to aid the court in claim construction. *Id.* at 980–81. However, the intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." Reliance upon extrinsic evidence is improper where the intrinsic evidence unambiguously describes the scope of the patented invention. *Vitronics,* 90 F.3d at 1582–83.

 A claim may be stated in means-plus-function language. *Valmont Industries, Inc. v. Reinke Mfg. Co., Inc.,* 983 F.2d 1039, 1041–42 (Fed.Cir.1993). To read claim limitations expressed in means-plus-function terms on an accused device, that device must employ means identical to or the equivalent of the structures, material, or acts described in the patent specification. *See* 35 U.S.C. § 112,¶6; *Valmont,* 983 F.2d at 1042. Thus, claims written in means-plus-function terms are construed "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.,* 122 F.3d 1040, 1041 (Fed. Cir.1997). Following these general principles, the court first construes the claims of the patent.

 The second step in an infringement analysis is determining whether a particular device infringes a properly construed claim. Whether properly construed claims read onto an accused device is a question of fact. *General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 981 (Fed.Cir.1997). Infringement occurs either literally or under the doctrine of equivalents. Literal infringement of a patent means that every limitation of the patent claim can be found in the infringing device. *See General Mills,* 103 F.3d at 981. The doctrine of equivalents applies when "every limitation of the asserted claim, or its equivalent, is found in the accused subject matter, the latter differs from what is literally claimed only insubstantially, and it performs substantially the same function in substantially the same way to achieve substantially the same result." *Wright Medical Technology,* 122 F.3d at 1444 (citing *Warner–Jenkinson Co. v. Hilton*

*Davis Chem. Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1054, 137 L.Ed.2d 146 (1997)). This determination is also a question of fact. *General Mills* at 984–85. The doctrine of equivalents is not a license to ignore structural and functional limitations of the claim as these are limitations on which the public is entitled to rely in avoiding infringement. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1582 (Fed.Cir.1996). The doctrine of equivalents cannot be used to protect subject matter in, or obvious in light of, the prior art. *Id.* This doctrine also cannot be used to recapture subject matter that was relinquished during prosecution of the patent. *Id.* The doctrine of equivalents is to be applied as an objective inquiry on an element-by-element basis. *Warner–Jenkinson Co.,* 117 S.Ct. at 1054.

### 1. *The '382 patent*

 The Defendant concedes that its cleaners contain elements (a)-(c) of independent Claim 1 and the limitation contained in Claim 2 which is dependent on Claim 1. The dispute between the parties involves the construction of Claim 1(d). This describes the swimming pool cleaner as comprising a "stop for preventing upward flexing of the peripheral edge beyond a predetermined amount located forward of the body and above and substantially inward of the peripheral edge."

The specification discloses a retainer which forms a stop to prevent the upward flexing of the flexible disc relative to the foot of the product by more than a predetermined amount. (Doc. No. 19, Exh. B, col. 3, lines 38–40). The pictures and descriptions in the specification show the retainer as a circle with a rod coming out of the retainer running above and parallel to the flexible disc. Member 11 also extends from the retainer at an upward angle and connects with the cleaner just above the body. In addition, the picture shows that the retainer is located inward from the peripheral edge of the disc and is forward of the body. Only the retainer and not the rod or member 11 extending from the retainer is located forward of the body and substantially inward of the disc's periphery. Based on the claim language and the specifications, the Court construes the "stop" as

consisting solely of the retainer. The Court further construes this claim based on the language of the claim and the specifications as requiring the stop to be located above the disc, substantially inward from the disc periphery, and forward of the body.

The prosecution history lends support to this conclusion by emphasizing the stop/disc periphery relationship. During the prosecution of the '382 patent, the patent examiner rejected Claim 11 (subsequently renumbered as Claim 1) as not being patentable based on prior art, the Kreepy Krauly's '227 patent. (Doc. No. 19, Exh. H at BIC 178). The specifications of the '227 patent show a short flange (member 20) just above and parallel to the disc. (Doc. No. 19, Exh. C). The patent examiner noted that while the '227 patent failed to indicate whether the short flange of member 20 could prevent the flexing of the disc, it could very well function as a stop. (*Id.*, Exh. H at BIC 173, 180). Consequently, the patent examiner rejected Claim 11 as failing to define a particular stop-flange periphery relationship. (*Id.* at BIC 180). The applicant then amended the claim to set forth the specific stop/disc periphery relationship recited in Claim 1(d). (*Id.* at BIC 184–85). This change was made by the applicant to define in a more distinct manner the subject matter applicant regards as the invention and to claim the structure of the invention with greater specificity. (*Id.* at BIC 186). The applicant also stated that "the claims now define a stop/disk periphery relationship not disclosed in" the '227 patent. (*Id.*).

■ Based on the construction of Claim 1(d), the Court finds that the Glider and Cruiser cleaners do not literally infringe the '382 patent. The Defendant's cleaners each contain a weight arm that extends forwardly from the base of the pool cleaners and turns upward to place a weight out of the way of the flexible disc. The weight arms extend at least to the peripheral edge of the flexible disc. A large part of the weight arm, in contrast to the retainer described in the '382 patent specification, is not located forward of the body of the cleaners. The spatial relationship of the Defendant cleaners' weight arm and weight to their flexible discs is clearly different from the

specific stop-disc periphery relationship disclosed in Claim 1(d). Consequently, the Defendant's cleaners do not literally infringe the '382 patent. The Defendant is entitled to summary judgment on this issue.

■ The Court now considers whether the Defendant's cleaners infringe the '382 patent under the doctrine of equivalents. Martin Hoffinger, the Defendant's Chief Executive Officer, testified that the weight arms and attached weight were not intended to and do not act as a stop for preventing upward flexing of the disc during the normal operation of the cleaners. (Doc. No. 27, Hoffinger Decl., ¶ 11). Hoffinger testified that the weight arm is used to suspend a weight so that a smaller weight can be used than would be possible for leveraging the cleaner if the weight was mounted on the body. (Hoffinger Dep. at 109–110). This leveraging function is similar to the function of the retainer as described in the '382 patent. Hoffinger further testified that the operation by the weight arm as a stop would interfere with the flexing of the disc which is a necessary function of the Defendant's cleaners. (*Id.* at 119–120). Dr. Wayne Book, a professor of mechanical engineering, and Chris Rice, Plaintiff's manager of engineering, testified that the weight arm of the Defendant's cleaners is identical in function and structure to the '382 patent with regard to both the stop and leverage function. (Doc. No. 25, Book Decl., ¶ 10; Doc. No. 24, Rice Decl., ¶ 14). The Court concludes, therefore, that genuine issues of material fact exist to preclude summary judgment for either party as to whether the Defendant's cleaners differ insubstantially from Claim 1(d) of the '382 patent, and perform substantially the same function in substantially the same way to achieve substantially the same result as that patent.

■ The Defendant contends that prosecution history estoppel precludes the Plaintiff from obtaining patent protection for subject matter relinquished during prosecution to obtain allowance of the claim. The Defendant refers to the amendment setting forth the specific stop/disc periphery relationship to distinguish the patent from the Kreepy Krauly '227 patent. "Whenever

prosecution history estoppel is invoked as a limitation to infringement under the doctrine of equivalents, a close examination must be made as to, not only what was surrendered, but also the reason for such a surrender." *Insta–Foam Prods., Inc. v. Universal Foam Sys., Inc.,* 906 F.2d 698, 703 (Fed.Cir.1990). The scope of any claimed prosecution history estoppel is determined in light of the prior art in the field relevant to the change, the statements made to the patent examiner regarding the reason for the change, and the purpose of the change as it relates to allowance. *Mannesmann Demag Corp. v. Engineered Metal Prods.,* 793 F.2d 1279, 1284–85 (Fed.Cir.1986). At best, promissory history estoppel would only prevent the Plaintiff from claiming a short flange, as detailed in the Kreepy Krauly '227 patent, as a stop. The Plaintiff is not prevented from claiming coverage under the doctrine of equivalents for stops that extend to or beyond the disc periphery.

■ The Defendant also contends that to the extent the weight arm acts as a stop, it is obvious in light of the prior art. The Defendant contends that the spatial relationship between the Defendant's cleaner's weight arm and disc is closely analogous to that of the curved guide fender or bumper bar disclosed in the Kreepy Krauly '156 patent. (*See* Doc. No. 19, Defendant's Exh. E). The drawings to the '156 patent disclose a curved member starting near the base of the cleaner, extending forward of the body, and ending near the top of the cleaner. (*Id.*). However, the claims and specifications do not disclose that this "bumper bar" was intended to function or did function as a stop. The Court concludes that the stop function disclosed in the '382 patent is not obvious in light of the prior art. Thus, as stated above, when viewing the facts in the light most favorable to the non-moving party, the Court concludes that neither the Plaintiff nor the Defendant is entitled to summary judgment regarding whether the Defendant's cleaners infringe the '328 patent under the doctrine of equivalents.

#### 2. *The '068 patent*

■ The Defendant concedes that its cleaners have all the elements of Claim 1 of the '068 patent except "a baffle plate in the head between the inlet and valve to cause one of the passages to be more restricted and less direct between inlet and outlet then the other." The parties do not dispute the construction of this part of Claim 1. Rather, the arguments focus on whether the baffle plate in the Defendant's cleaners "cause one of the passages to be more restricted and less direct between inlet and outlet than the other."

With respect to Claim 1, the specifications of the '068 patent disclose that the restriction of flow passages may be achieved by having a single valve operating in conjunction with a baffle plate having an offset opening. (Doc. No. 19, Exh. A, Fig.1). The specification also discloses an alternative configuration of a pool cleaner having two valves operating in synchronism but in opposite directions in conjunction with a baffle plate having a central opening. (*Id.,* Exh. A, Fig. 3). This embodiment, however, relates to Claim 6 and the Plaintiff has not alleged that the Defendant's cleaners infringe Claim 6. The subject baffle plate in the '068 patent is referred to in the specification and drawings as "partition member 17." (*Id.,* Exh. A., col. 2, lines 65–66). The patent describes "a partition member 17 included in the inlet 2 so that the flow of water between the head 1 is constrained to pass through the [offset] opening 18 into and through the body 13. The opening 18 is in a straight line with, but offset from, the axis of the outlet 3 in the direction opposite the arrow 'A'." (*Id.,* Exh. A., col. 2, lines 65–68, col. 3, lines 1–2). The patent further describes the flow of water through the cleaners as follows:

the flow of the water causes the valve to oscillate between its two terminal positions. In one such position the flow is substantially direct through the opening 18 to outlet 3 while in the other water must pass between [the baffle plate] and the base of the valve 14 .... It is found that with this construction there is a continuous flow of water through the equipment. However, because the two passages through the head as of different shape and size a pulsation occurs in the flow which

causes contractions and relaxations in the longitudinally resilient suction pipe.

(*Id.,* Exh. A, col. 3, lines 21–33).

It is undisputed that the Defendant's cleaners have a baffle plate with a central opening, and not an offset opening, to restrict the water flow path. The Court finds that this central opening causes the flow passages around the valve to be of equal length in contrast to the '068 patent where the passages between the input and output are of different length. Because of the central opening in the baffle plate, the Court finds that the water flow in the Defendant's cleaners will not be more or less direct in either of the twin flow passages. Accordingly, the Defendant's cleaners do not infringe Claim 1 of the '068 patent.

■ The Defendant's cleaners do not infringe the '068 patent under the doctrine of equivalents. The baffle plate with its central opening and resulting twin flow passages is clearly different in structure and function to the '068 patent. *See Athletic Alternatives,* 73 F.3d at 1582. Further, while the Plaintiff has disputed that the Kreepy Krauly '227 patent serves as prior art to the '068 patent, it has failed to introduce any evidence that the invention date of the '068 patent occurred before the '227 patent. Rather, the undisputed evidence reflects that the '227 patent is prior art to the '068 patent. (*See* Doc. No. 19, Exhs. A, C). The specifications of the '227 patent disclose a member analogous to a baffle plate with a central opening and resulting twin flow bores, or passages between the inlet and the outlet. (Doc. No. 19, Exh. C. Fig. 2, col. 1, lines 43–44, col. 3, lines 25–46). Thus, because the Defendant's cleaners practice the prior art, there can be no infringement under the doctrine of equivalents. *See Athletic Alternatives,* 73 F.3d at 1582. The Defendant is therefore entitled to summary judgment as to whether its cleaners infringe the '068 patent.

### B. *WILLFUL INFRINGEMENT*

■ In a patent case, courts are authorized to award treble damages for willful infringement. 35 U.S.C. § 284. The primary consideration for determining "willful infringement" is whether the infringing par-

ty, "acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing." *SRI International, Inc. v. Advanced Technology Laboratories, Inc.,* 127 F.3d 1462, 1464–65 (Fed.Cir.1997). In determining willful infringement, the question is whether "a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated." *Id.* at 1465. Willful infringement is a question of fact and must be established by clear and convincing evidence. *Id.* at 1465. Here, the Court has yet to conclude that the Defendant's cleaners infringe upon any of the Plaintiff's patents. It is therefore premature for the Court to determine as a matter of law that the Plaintiff is entitled to judgment on the issue of willful infringement. Accordingly, the Plaintiff's Motion for Summary Judgment on this issue is denied.

### C. *VALIDITY OF THE '382 PATENT*

■ A patent is presumed valid. 35 U.S.C. § 282. The party asserting invalidity has the burden of proving facts by clear and convincing evidence that the patent is invalid. *See North American Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1579 (1993), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *UMC Electronics Co. v. United States,* 816 F.2d 647, 656 (Fed. Cir.1987), *cert. denied,* 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). Under 35 U.S.C. § 102(b), a patent is valid unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country more than one year prior to the date of the application for patent in the United States." Further, "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103(a).

■ In arguing that the Plaintiff is not entitled to summary judgment on the issue of

validity, the Defendant contends that if the weight arm is considered the functional equivalent of the "stop" disclosed in Claim 1 of the '382 patent, then the '382 patent is invalid because the Kreepy Krauly '948 and '156 patents disclose the functionally-equivalent bumper bar more than one year before the filing date of the application for the '382 patent. As discussed above, genuine issues of material fact exist as to whether the weight arms of the Defendant's cleaners are functionally equivalent to the stop feature of the '382 patent. However, after carefully reviewing the evidence, the Court concludes that the Defendant cannot establish by clear and convincing evidence that the '382 patent is invalid. The Court finds that the Kreepy Krauly '948 and '156 patents do not disclose the functional equivalent of the '382 patent's stop feature. The Court also finds that the stop/disk peripheral relationship feature in the '382 patent is not obvious in light of this prior art. Accordingly, the Plaintiff is entitled to summary judgment as to the validity of the '382 patent.

## IV. CONCLUSION

The Plaintiff's Motion for Partial Summary Judgment [Doc. No. 21] and the Defendant's Motion for Summary Judgment [Doc. No. 19] are GRANTED in part and DENIED in part. In the absence of any genuine issues of material fact, the Defendant is entitled to summary judgment on the claims that its cleaners (1) do not literally infringe the '382 patent and (2) do not infringe the '068 patent either literally or under the doctrine of equivalents. As to these claims, the Plaintiff's Motion for Summary Judgment is DENIED. Because genuine issues of fact exist, neither the Plaintiff nor the Defendant are entitled to summary judgment on the issue of whether the Defendant's cleaners infringe the '382 patent under the doctrine of equivalents. The Plaintiff is entitled to summary judgment on the issue of validity of the '382 patent. The Plaintiff is not entitled to summary judgment on the issue of willful infringement. The Clerk is directed to enter judgment in accordance with this order.