**ZODIAC POOL CARE, INC., (formerly known as Baracuda International Corporation) Plaintiff–Appellant,**

v.

**HOFFINGER INDUSTRIES, INC., Defendant–Cross–Appellant.**

Nos. 99–1224, 99–1233.

United States Court of Appeals, Federal Circuit.

March 24, 2000.

Rehearing and Rehearing En Banc Denied May 19, 2000.

Caroline W. Spangenberg, Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for plaintiff-appellant. With her on the brief were Dean W. Russell, Mitchell G. Stockwell, and Camilla C. Williams.

Timothy J. Buckley III, Finley & Buckley, P.C., of Atlanta, GA, argued for defendant-cross appellant.

Before BRYSON, Circuit Judge, SKELTON, Senior Circuit Judge, and GAJARSA, Circuit Judge.

Opinion for the court filed by Circuit Judge GAJARSA. Circuit Judge BRYSON concurs in part and dissents in part.

GAJARSA, Circuit Judge.

## DECISION

Zodiac Pool Care, Inc. ("Zodiac") is the assignee of U.S. Patent Nos. 4,133,068 ("the '068 patent") and 5,014,382 ("the '382 patent"). In 1996, Zodiac sued Hoffinger Industries, Inc. ("Hoffinger") in the United States District Court for the Northern District of Georgia, alleging infringement of both patents. Zodiac further alleged that the infringement was willful, justifying an award of treble damages. Hoffinger answered by denying infringement of both patents and alleging that both patents are invalid.

Upon Hoffinger's motion for summary judgment and Zodiac's motion for partial summary judgment, the district court held that: (1) Hoffinger did not infringe the '068 patent either literally or under the Doctrine of Equivalents ("DOE"); (2) Hoffinger did not infringe the '382 patent literally; and (3) the '382 patent is not invalid. The court then allowed the case to proceed to trial on the issue of infringement of the '382 patent under the DOE. After a jury found that Hoffinger infringed the '382 patent under the DOE, and did so willfully, it awarded damages in the amount of $1,976,000. The parties then moved for judgment as a matter of law ("JMOL").

The district court granted Hoffinger's motion for JMOL, finding that Hoffinger did not infringe the '382 patent under the DOE. The district court also conditionally granted Hoffinger a new trial on the issue of damages and a new trial on infringement in the event this court finds that Hoffinger waived its right to seek JMOL by not renewing its motion in its entirety at the close of trial. Under Fed.R.Civ.P. 50(c), "[i]f the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any." The district court refused, however, to award Hoffinger attorney's fees.

The parties now cross-appeal. Because the district court properly construed the meaning of the terms of the '382 patent, awarded Hoffinger summary judgment on the issue of literal infringement of the '382 patent, granted Hoffinger JMOL on the issue DOE infringement of the '382 patent, and denied Hoffinger attorney fees, this court affirms.

## I.

Zodiac did not appeal the district courts entry of judgment of non-infringement of the '068 patent. Therefore, this appeal is limited to the issues relating to the '382

patent.[1] The '382 patent discloses a vacuum system for cleaning swimming pools. The pool cleaner system comprises four elements, as set forth in Claim 1 of the patent:

(a) a forwardly inclined body having a flow passage therethrough;

(b) an inlet foot having a water inlet, the inlet foot being attached to the body and connected to the flow passage and when in use, is proximate to a surface to be cleaned;

(c) a flexible disc surrounding the water inlet and rotably connected to the inlet foot, and having a peripheral edge; and

(d) a stop for preventing upward flexing of the peripheral edge beyond a predetermined amount located forward of the body and above and substantially inward of the peripheral edge.

A drawing of the system as claimed by the '382 patent is provided in the single figure of the patent, and is set forth below:

As described in the '382 patent, pool cleaners of the type claimed move in a step-wise manner automatically and in random fashion over submerged surfaces to be cleaned. As the cleaner moves, it traverses from horizontal surfaces to vertical surfaces, as well as the reverse. Unfortunately, the cleaner often becomes unbalanced as it moves around the pool, leaving the cleaner oriented away from the surface and the cleaner inlet away from the target surface. This reduces the cleaner's effectiveness, unless one attaches a cumbersome weight to one side of the cleaner and a float to the other side. While the weight and float solve the problem of orientation, they render the cleaner more burdensome to use. In addition, the disc of the typical cleaner resists and hinders the movement of the cleaner from horizontal to vertical surfaces and can cause damage to pools with vinyl sheet liners.

The invention of the '382 patent offers an alternative for keeping the cleaner properly oriented and the inlet close to the target surface. Instead of a weight and float, the invention uses an attached stop (13) for preventing the disc (6) from flexing upward as it moves across the surface. The stop is located upward and above the disc, and is attached to the body of the cleaner. Because the disc remains flat, the cleaner maintains a proper orientation. Properly oriented, the inlet remains close to the surface.

Hoffinger makes and sells automatic pool cleaners throughout the United States under the trade names "Glider" and "Cruiser." In 1996, Zodiac sued Hoffinger for patent infringement. Hoffinger responded by denying infringement and raising the affirmative defenses of patent invalidity under 35 U.S.C. §§ 102, 103 and 112 (1994).

1. Although Zodiac's Enumeration of Errors includes the district court's rulings on the '068 patent, Zodiac represents in its Reply Brief that it no longer challenges these rulings in this appeal.

The district court granted Hoffinger's motion for summary judgment that it did not literally infringe either of the asserted patents. *See Baracuda Intl. Corp. v. Hoffinger Indus., Inc.*, 4 F.Supp.2d 1188, 1198 (N.D.Ga.1998).[2] The court also held as a matter of law that Hoffinger did not infringe the '068 patent under the DOE. Concomitantly, the district court granted Zodiac summary judgment on the issue of the validity of the '382 patent, and held that genuine issues of material fact precluded summary judgment on the issue of infringement of the '382 patent under the DOE. *See id.* The district court further held that fact issues precluded summary judgment on the issue of willfulness. *See id.*

Thereafter, the district court held a five-day jury trial on all outstanding issues. At issue were four claims of the '382 patent: independent claim 1 and dependent claims 2, 3 and 10. During the trial, Zodiac presented evidence that Hoffinger's accused devices included each of the four limitations of claim 1. In particular, the jury heard testimony from ten witnesses, received 55 exhibits and viewed a demonstration both live and on videotape of the Hoffinger devices in operation. The jury also heard testimony and reviewed other evidence on the specific issue of whether Hoffinger's weight arm was equivalent to the stop set forth in limitation (d).

Hoffinger effectively conceded that its accused devices included the first three limitations of independent claim 1. It vigorously denied, however, that its devices included the fourth limitation, (d): "a stop for preventing upward flexing of the peripheral edge [of the flexible disc] beyond a predetermined amount located forward of the body and above and substantially inward of the peripheral edge." Hoffinger produced evidence that its weight arm could not function as the stop in limitation (d), because its arm extended at least to the peripheral edge of the disk, and thus was not located "substantially inward" thereof. As a result, argued Hoffinger, its

devices did not infringe the '382 patent at all. If anything, Hoffinger continued, its devices practiced the prior art disclosed in United States Patent No. 4,023,227 (the "'227 patent"), which is owned by Kreepy Krauly U.S.A., Inc. ("KK") and has since expired. Hoffinger also argued that its devices practiced aspects of other KK patents that it has licensed.

At the close of evidence, both parties moved for JMOL. Both motions were denied, and the court submitted the case to the jury. The jury found that Hoffinger not only infringed the '382 patent under the DOE, but did so willfully. It then awarded Zodiac damages in the amount of $1.976 million.

After the verdict, both parties renewed their motions for JMOL. Citing this courts decision in *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 44 USPQ2d 1103 (Fed.Cir.1997), Hoffinger argued that the asserted claims included specific structural limitations, and "the doctrine of equivalents cannot be used to expand those claims to cover foreseeable alterations, such as Hoffinger's weight arm, that were not specifically claimed by the patentee." Zodiac responded that Hoffinger had waived its right to renew its JMOL motion on the issue of infringement because it did not expressly renew the motion with specificity during its argument after the close of evidence. Zodiac also asserted that *Sage Products* did not limit the jury's authority to find infringement under the DOE.

The district court granted Hoffinger JMOL on the issue of infringement of the '382 patent under the DOE. The district court initially held that under Fed. R.Civ.P. 50, Hoffinger had preserved its right to renew its JMOL motion during its argument to the court after the close of evidence when it specifically addressed the issue of Zodiac's claim for lost profits. The court stated that it "understood the Defendant to be renewing its Rule 50 motion in its entirety, but only rearguing the

2. Zodiac was formerly known as the Baracuda International Corporation.

point relating to the issue of lost profits." Moving to the merits of Hoffinger's motion, the district court noted our holding in *Sage Products* that "[b]ecause [an] issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities." *Id.* at 1424, 126 F.3d 1420, 44 USPQ2d at 1108. The court then concluded that "[t]he analysis in *Sage Products* casts grave doubt over the validity of the analysis and conclusion of this Court in its Summary Judgment Order." The district court further noted this court's decision in *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1321, 47 USPQ2d 1272, 1280 (Fed.Cir.1998), in which we held that a "subtle difference in degree, not a clear substantial difference or difference in kind" precluded summary judgment on the issue of DOE. As a result, the district court found that it had erred in submitting the issue of DOE infringement to the jury.

The district court also conditionally granted a new trial on damages and a new trial on infringement in the event this court finds that Hoffinger had waived its right to seek JMOL. Exercising its discretion under Rule 50, the court found that "the award [amount] of damages is so large in light of the evidence of record that the verdict does 'shock the conscience of the court.'" The court specifically noted that the jury had erroneously awarded Zodiac lost profits in an amount equal to the *total* of the three alternative lost profits calculations offered, as well the *total* of the three alternative prejudgment interest calculations and the *total* of the three alternative reasonable royalty calculations.

On the issue of attorney's fees, the court found that "[t]he Plaintiff and its expert had a good faith argument that the structure of Defendant's cleaners infringed based upon their analysis of the water flow in the accused cleaners." Accordingly, the district court denied Hoffinger's request for a fee award.

Zodiac now appeals the district court's summary judgment on literal infringement of the '382 patent, the court's grant of JMOL on the issue of infringement of the '382 patent under the DOE and the court's conditional new trial rulings. Hoffinger cross-appeals the district court's refusal to award it attorney's fees as to the claims surrounding the '068 patent. This court has jurisdiction over the appeals under 28 U.S.C. § 1295(a) (1994).

## II.

To establish whether an accused device infringes a patent, this court performs a two-step analysis. "First, the claims must be correctly construed to determine the scope of the claims. Second, the claims must be compared to the accused device." *Kahn v. General Motors Corp.,* 135 F.3d 1472, 1476, 45 USPQ2d 1608, 1610 (Fed.Cir.1998) (citations omitted). Claim construction is a question of law, which we perform without deference to the trial court. *See Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1454–56, 46 USPQ2d 1169, 1172–75 (Fed.Cir.1998); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979–81, 34 USPQ2d 1321, 1329–31 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). As for the second step, we must affirm a jury's determination that the accused device or process contains each limitation of the claim if that determination is supported by substantial evidence. *See Seal– Flex, Inc. v. Athletic Track Court Constr.,* 172 F.3d 836, 842, 50 USPQ2d 1225, 1228 (Fed.Cir.1999).

We begin with the issue of claim construction. The meaning of the claims at issue in this case is largely undisputed. The parties agree that the claims include four separate limitations, and that the first three of these are included in Hoffinger's devices. What is disputed is the meaning of the fourth limitation, limitation (d), and whether this limitation reads on a corresponding element in either the "Cruiser" or the "Glider." As noted earlier, limitation (d) reads as follows: "a stop for preventing upward flexing of the peripheral

edge beyond a predetermined amount located forward of the body and above and substantially inward of the peripheral edge." The parties disagree as to whether this limitation includes a stop that extends at least to the peripheral edge of the flexible disc, and perhaps beyond.

■ When construing the meaning of a claim, the court may consider both intrinsic and extrinsic evidence. Intrinsic evidence consists of the claim itself, the specification, and any prosecution history. Extrinsic evidence includes expert testimony, inventor testimony, dictionaries, treatises, and prior art not cited in the prosecution history. The court turns to extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of the asserted claim. *See generally Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582–84, 39 USPQ2d 1573, 1576–78 (Fed.Cir.1996).

Zodiac argues that when the district court construed limitation (d), it ignored the intrinsic evidence surrounding the patent. According to Zodiac, limitation (d) recites a stop that is sufficiently rigid to prevent the leading edge of a cleaner's disc from flexing upward. The stop may take the form of any mechanical structure capable of stopping the disc, and must be located on the front or leading side of the body. Most importantly, continues Zodiac, only some of the structure must be inside the peripheral edge of the disc in order to prevent the flexing of the disc. Thus, Zodiac contends that the district court erred when it found that all of the structure must be "substantially inward of" the disc's periphery.

We disagree. First, the language of the limitation itself provides for a "stop ... located ... substantially inward of the peripheral edge." It defies common usage to suggest that a stop which is "substantially inward" of an edge could at the same time extend at least to that same edge. Zodiac contends that as long a substantial portion of the stop is in fact inward of the edge, both conditions could be satisfied. This contention, however, ignores that the limi-

tation recites a relationship between the edge and the stop, not a relationship between the edge and a portion of the stop.

Second, the prosecution history confirms this interpretation. As originally claimed, element "d" recited only a "a stop located forward and above the body and inward of the periphery of the flexible disc." The Examiner rejected the limitation under 35 U.S.C. § 102(b) (1994), in light of the KK '227 patent, which included a flange that could act as a "stop." In response to the Examiner's suggestion, the applicant initially tried to distinguish the KK '227 patent without changing the claim. The Examiner, however, rejected the distinction, and made the rejection final after noting that "the upper flange of [the Kreepy Krauly '227 patent] could well function as a stop. Nothing in the claims defines a stop-flange periphery relationship as argued by applicant."

Thereafter, the applicant amended the claim to include not only a stop capable of performing the function, but also a stop located "substantially inward" of the disc's peripheral edge. After the amendment, the Examiner allowed the claim. Thus, the applicant obtained the patent only after he disclaimed a relationship between the stop and the disk's edge that permitted the stop to extend up to and beyond the edge. As the applicant himself noted, he made the disclaimer "to more distinctly define the subject matter applicant regards as the invention and to claim the structure of the invention with greater specificity. Applicant submits that the claims now define a stop/disk periphery relationship not disclosed in [the Kreepy Krauly '227 patent]."

■ Given this construction, we find that the district court properly granted summary judgment of no literal infringement of the '382 patent. Upon a motion for summary judgment, a district court must decide "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On appeal, we apply this standard anew, without deference to the determination of the district court. *See Glaxo Group Ltd. v. TorPharm, Inc.,* 153 F.3d 1366, 1370, 47 USPQ2d 1836, 1839 (Fed.Cir.1998). In this case, the weight arms of the accused devices clearly extend at least to the peripheral edge of the flexible disk. This understanding is confirmed upon a visual inspection of the devices, as well as various drawings and diagrams depicting the devices. As a result, no reasonable jury could find that the accused devices include limitation (d), one of the limitation set forth in the patent claims. Absent any limitation of a patent claim, an accused device cannot be held to literally infringe the claim. *See SmithKline Diagnostics v. Helena Laboratories Corp.,* 859 F.2d 878, 889, 8 USPQ2d 1468, 1477 (Fed.Cir.1988).

■ We further find that the district court properly entered JMOL for Hoffinger on the issue of infringement under the DOE. "We review a trial court's decision on a motion for judgment as a matter of law following a jury verdict by reapplying its own standard of review. Therefore, for [Hoffinger] to prevail on appeal it must prove that the jury's factual findings were not supported by substantial evidence or that the facts were not sufficient to support the conclusions necessarily drawn by the jury on the way to its verdict." *Tec Air, Inc. v. Denso Mfg. Mich. Inc.,* 192 F.3d 1353, 1357, 52 USPQ2d 1294, 1296 (Fed.Cir.1999) (citation omitted). In determining whether Hoffinger meets this standard, "we must consider the evidence of record in the light most favorable to [Zodiac], drawing all reasonable inferences in its favor, without disturbing the jury's credibility determinations or substituting our resolutions of conflicting evidence for those of the jury." *Applied Med. Resources Corp. v. United States Surgical Corp.,* 147 F.3d 1374, 1376–77, 47 USPQ2d 1289, 1291 (Fed.Cir.1998) (citations omit-

ted). If no reasonable person could have reached a verdict for Zodiac in light of the record before the jury, Hoffinger must prevail. *See id.* at 1376, 147 F.3d 1374, 47 USPQ2d at 1291.

■ To be sure, a device that does not infringe a patent claim literally may still infringe the very same claim under the DOE if every limitation of the claim is literally or equivalently present in the accused device. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934–35, 4 USPQ2d 1737, 1739–40 (Fed.Cir.1987). For a claim limitation to be "equivalently present" in an accused device, there must be only "insubstantial differences" between the missing claim limitation and corresponding aspects of the accused device. *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 1517–18, 35 USPQ2d 1641, 1645 (Fed.Cir.1995), *rev'd on other grounds,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Although equivalence is an issue of fact ordinarily preserved for a jury, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner–Jenkinson,* 520 U.S. at 39 n. 8, 117 S.Ct. 1040.

In this case, the district court resolved the issue of equivalence, but only after it denied summary judgment on the issue, and the jury rendered a verdict. Because we agree that equivalence is untenable in light of the claims when properly construed, we affirm the district court's entry of judgment.

■ We conclude that the equivalence issue is resolved by our decision in *Sage Products.* In *Sage Products,* a patentee for a system of disposing of sharp medical instruments brought an infringement action against a competitor, and argued infringement both literally and under the DOE. 126 F.3d at 1423–24, 44 USPQ2d at 1105. After affirming the district court's grant of summary judgment on the issue

of literal infringement, we considered the issue of equivalents infringement. *See id.* at 1424, 44 USQP2d at 1106.

The court initially determined that the patent claimed a different arrangement of limitations than was found in the accused device. "As the district court recognized, each theory [of the plaintiffs] suffers from one of two alternative problems either the elongated slot is not substantially 'at the top of the container body' or there is no first constriction that extends substantially 'over said slot.'" *Id.* at 1424, 126 F.3d 1420, 44 USPQ2d at 1106. After considering the teachings of the Supreme Court in *Warner–Jenkinson* and earlier decisions of this court in such cases as *Pennwalt* and *Dolly, Inc. v. Spalding Evenflo Cos.*, 16 F.3d 394, 400, 29 USPQ2d 1767, 1771 (Fed. Cir.1994), we noted that the DOE "prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Sage Products*, 126 F.3d at 1424, 44 USPQ2d at 1106. The court then held that the patentee was bound by this specific arrangement, and could not escape under the DOE. "Because this issued patent contains clear structural limitations, the public has a right to rely on those limits in conducting its business activities. This court will not effectively remove such a limitation under a doctrine designed to prevent 'fraud on the patent.'" *Id.* at 1425–26, 126 F.3d 1420, 44 USPQ2d at 1108.

These same principles apply no less in the instant case. Zodiac argues that weight arms of the accused devices, even if not literally infringing, infringe under the DOE because they accomplish substantially the same function, in substantially the same way, to achieve substantially the same result. However, like the patent at issue in *Sage Products*, the '382 patent contains "clear structural limitations," including a limitation that the stop be located "substantially inward" of the peripheral edge of the disc. Given the proper construction of this limitation, a verdict of infringement under the DOE would reduce the claims to nothing more than "functional abstracts, devoid of meaningful structural limitations on which the public could rely." *Sage Products*, 126 F.3d at 1424, 44 USPQ2d at 1107 (citing *Conopco, Inc. v. May Dept. Stores Co.*, 46 F.3d 1556, 1562, 32 USPQ2d 1225, 1228 (Fed.Cir.1994)).

No less than the defendants in *Sage Products*, Hoffinger and others in the pool cleaner industry have a right to rely on these limitations in planning their activities. As we were reminded in *Warner–Jenkinson Co.*, 520 U.S. at 29, 117 S.Ct. 1040, "[i]t is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." In sum, we agree with the district court that no reasonable jury could find that a stop which extends to the peripheral edge of a disk is equivalent to one that is "substantially inward" of the very same disk. To use the words of our decision in *Ethicon Endo–Surgery*, 149 F.3d at 1319, 47 USPQ2d at 1278, we agree that the two stops are "not even close." Thus, Hoffinger was entitled to JMOL, and the district court's grant must be affirmed.

 We further conclude that the district court properly rejected Zodiac's argument that in any event Hoffinger waived its right to JMOL on the issue of DOE infringement by not renewing its motion at the close of trial. We must respect the precedent of the Eleventh Circuit on this issue, because this court defers to the law of the regional circuits on matters of procedural law. *See Payless Shoesource, Inc. v. Reebok Intl., Ltd.*, 998 F.2d 985, 987, 27 USPQ2d 1516, 1518 (Fed.Cir. 1993). The Eleventh Circuit has "taken a liberal view of what constitutes a motion for directed verdict." *National Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir.1986). The trial transcript confirms that Hoffinger did move for JMOL at the end of trial, and emphasized its argument on the issue of lost profits. Moreover, this general motion took place

immediately after the court ruled that the issues of infringement and willfulness could not be decided as a matter of law.

Ms. Spangenberg: Your honor, I think probably both parties wish to renew their J.M.O.L. motions. (Short recess was taken)

THE COURT: All right. Y'all wanted to renew your Rule 50 motions. Go ahead Ms. Spangenberg.

Ms. Spangenberg: Yes, Sir. Your honor, we filed a written motion. Essentially we take the position that at least as to infringement and the issue of willfulness that Plaintiff has met its burden of showing both of those as a matter of law, and we would renew our motion.

THE COURT: All right. I think there is a jury issue on both of those issues, so I'll deny the motion. Mr. Thomas?

Mr. Thomas: Your honor, the issue of lost profits, we renew our motion for that. That seems to be the most clear-cut issue in the case that's not been carried by the Plaintiff ...

To be sure, the transcript shows that counsel for Hoffinger did not explicitly declare that Hoffinger renewed its motion on all outstanding issues. Nevertheless, in light of the trial judge's declaration of his understanding, we find no compelling reason why counsel for Hoffinger should have emphasized issues that have already been ruled upon by the trial court. If anything, this would waste the court's time and both parties' resources. In any event, "[i]n matters of trial procedure such as that involved here, the trial judge is entrusted with wide discretion because he is in a far better position than [the appellate court] to appraise the effect of the improper argument of counsel." *Motorola Inc. v. Interdigital Technology Corp.*, 121 F.3d 1461, 1470, 43 USPQ2d 1481, 1487 (Fed.Cir. 1997) (citation omitted).

We conclude that the district court was justified in granting Hoffinger JMOL. Thus, the court need not consider the merits of the trial court's conditional award of a new trial under Rule 59. The court also need not consider Hoffinger's request for a new trial on the validity of the '382 patent. Because we affirm the district court's grant of JMOL, it is not necessary to address the propriety of the conditional award of a new trial. *Cf. Charles Woods Television Corp. v. Capital Cities/ABC, Inc.*, 869 F.2d 1155, 1157 n. 3 (8th Cir. 1989); *Johnson v. Town of Elizabethtown*, 800 F.2d 404, 406 n. 1 (4th Cir.1986).

 Finally, the district court acted well within its discretion in denying Hoffinger's motion for attorney's fees. Hoffinger specifically sought fees related to Zodiac's claim of infringement of the '068 patent. According to Hoffinger, this case was an "exceptional case," entitling it to fees as a prevailing party under 35 U.S.C. § 285 (1994). "[E]xceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent." *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050–51 (Fed. Cir.1992).

 This court reviews the decision of a lower court on a motion for fees under an abuse of discretion standard. *See id.* The record is clear that Zodiac hired an expert and secured an opinion before filing suit. At trial, the district court heard testimony from this same expert, and had the opportunity to observe his demeanor. Under these circumstances, it cannot be said that the "record contains no basis on which the district court rationally could have made its decision or ... [that] the judicial action is arbitrary, fanciful or clearly unreasonable." *Id.* at 1050.

### III.

We conclude that the district court properly granted summary judgment on the issue of literal infringement of the '382 patent, entered JMOL on the issue of infringement of the '382 patent under the DOE, and denied Hoffinger's request for attorney's fees. Therefore, we

*AFFIRM.*

**1418**

## COSTS

Each party will bear its own costs.

BRYSON, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the portions of this court's judgment upholding the district court's summary judgment of no literal infringement and overturning the jury's verdict of infringement under the doctrine of equivalents. I concur with the court's disposition of the other issues in the case.

This court's rulings on both infringement issues are based mainly on the court's interpretation of the phrase "substantially inward of the peripheral edge [of the flexible disc]" in claim 1 of the '382 patent. According to the court, the word "substantially" must be interpreted to mean "very much" or "far," so that the quoted phrase means "very much inward, or far inward of the peripheral edge of the flexible disc." The word "substantially," however, has another meaning: it can, and often does, mean "largely," "essentially, or "in the main." *See Webster's New 20th Century Dictionary* 1817 (1983); *Webster's New World Dictionary of the American Language* 1454 (1962); *see also Black's Law Dictionary* 1428 (6th ed.1990) ("essentially, without material qualification, in the main"); *Webster's Ninth New Collegiate Dictionary* 1176 (1983) ("largely but not wholly that which is specified"); 1176 (1983) ("largely but not wholly that which is specified"); *York Products Inc. v. Central Tractor Farm & Family Center,* 99 F.3d 1568, 1573, 40 USPQ2d 1619, 1622 (Fed.Cir.1996). Under that interpretation of the term "substantially," the phrase "substantially inward of the peripheral edge of the flexible disc" would mean "mostly or mainly inward of the peripheral edge of the flexible disc."

Because the term "substantially" can have either meaning, we must look elsewhere to determine which meaning should be adopted in this instance. When we do, we find that the claim language, the written description, and the prosecution history all point the same way: the term "sub-stantially" should be interpreted, as Zodiac proposes, to mean "largely," "mostly," or "in the main," rather than "far."

1. *The claim.* The stop would not serve the function that the patent envisages if it were positioned far inward of the edge of the flexible disc. The stop needs to be near the edge of the disc in order to perform the claimed function of "preventing upward flexing of the peripheral edge beyond a predetermined amount." If the stop is located far inward of the periphery of the disc, the edge of the disk will flex upward without restriction, creating many of the very problems that the patent was intended to overcome. Therefore, the language of the claim supports Zodiac's interpretation of the term "substantially."

2. *The written description.* The written description explains that the "retainer," which forms the stop, "is located a short distance above and adjacent the edge of the disc," and the stop "prevents the disc . . . from flexing upwardly relative to the foot by more that a predetermined amount." Col. 3, ll. 37–39. Thus, the patent makes clear that the stop is not located far inward of the peripheral edge of the disc, but is "adjacent" to the edge of the disc. For that reason, the written description is consistent with Zodiac's interpretation of the pertinent claim language.

3. *The prosecution history.* As originally drafted, claim 1 of the application contained language that read: "a stop is located forwardly of the body, a short distance above, and inwardly of, the periphery of the flexible disc." The examiner rejected that claim, in part on the ground that it was anticipated by U.S. Patent No. 4,023,227 to Chauvier. The examiner took the position that a flange that protruded slightly from the body of the cleaner in Chauvier was a "stop." The applicant rewrote the claim, including the following as limitation (d): "a stop located forward and above the body and inward of the periphery of the flexible disc." The applicant argued that the new claim was not anticipated by the Chauvier patent, as the

flange recited in Chauvier "does not act to prevent the disc from flexing a predetermined amount.... [It] cannot prevent the periphery of sealing flange 34 [*i.e.*, the flexible disc] from upward flexing." By contrast, the applicant continued, the stop recited in limitation (d) of the new claim "is suspended above and not connected to [the flexible disc] and thus prevents the periphery of [the flexible disc] from flexing upward more than a predetermined amount."

The examiner persisted in his rejection on several grounds, including that the claim as drafted was anticipated by Chauvier, that "the utility of said stop has not been developed in the claims," and that "[n]othing in the claims defines a stop-flange periphery relationship as argued by applicant." After a telephone interview, the applicant amended the language of limitation (d) by including the functional language "for preventing upward flexing of the peripheral edge beyond a predetermined amount," and by making the location of the stop more specific by reciting that it was "located forward of the body and above and substantially inward of the peripheral edge." The applicant explained that "the claims now define a stop/disk periphery relationship not disclosed in Chauvier." In that amended form, the claim was allowed.

Both the examiner's rejection in light of Chauvier and the amendment made by the applicant support Zodiac's interpretation of the pertinent claim language. If the term "substantially inward" is interpreted to mean "far inward," the claim language necessarily reads on the flange recited in Chauvier, since that flange is located far inward of the peripheral edge of Chauvier's flexible disc. Moreover, the function recited in the functional clause of the amended limitation was performed by the structure recited in the rest of the limitation. That is, the stop was located "substantially inward of the peripheral edge" of the flexible disc in order to prevent the upward flexing of the peripheral edge of the disc. But that congruence between structure and function obtains only if the word "substantially" is understood in this context to mean "mostly" rather than "far," because a stop located far inward of the peripheral edge would not prevent the upward flexing of the peripheral edge of the disc. Thus, Zodiac's interpretation of the claim is entirely consistent with, and indeed compelled by, the applicant's position before the Patent and Trademark Office. I would therefore construe claim 1 of the '382 patent to require that the stop be located *mainly* inward of the peripheral edge of the flexible disc, but not *far* inward of the edge of the disc.

That claim construction issue affects the disposition of both literal infringement and infringement under the doctrine of equivalents in this case. If Zodiac's claim construction were accepted, it would require that the summary judgment of no literal infringement be reversed with respect to both accused devices. And under Zodiac's claim construction the weight arms of the accused devices clearly could be found to be equivalent to the stops claimed in the '382 patent. I would therefore uphold the jury's verdict of infringement under the doctrine of equivalents and reverse the district court's grant of summary judgment of no literal infringement.