OMNIGLOW CORPORATION,
Plaintiff,

v.

UNIQUE INDUSTRIES,
INC., Defendant.

No. Civ.A. 99–30052–MAP.

United States District Court,
D. Massachusetts.

Feb. 11, 2002.

Thomas A. Kenefick, Springfield, MA, Daniel M. Gantt, Donald K. Reedy, Fish & Neave, New York City, for Plaintiff.

C. Jeffrey Kinder, Fierst & Pucci, Northampton, MA, Gerard F. Dunne, New York City, for Defendant.

MEMORANDUM REGARDING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S MOTION TO AMEND, AND DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

(*Docket Nos. 64, 68 and 73–78* )

PONSOR, District Judge.

## I. INTRODUCTION

Omniglow Corporation ("Omniglow") has sued Unique Industries, Inc. ("Unique")

for the alleged infringement of Patents 4,717,511 ("Patent '511") and 5,122,306 ("Patent '306"). In counts I and II of the amended complaint, plaintiff asserts that defendant is infringing Patents '511 and '306 by importing, selling and offering for sale products that contain certain chemicals without authority or license from the plaintiff. Both parties now move for partial summary judgment. Defendant also moves for leave to amend its Pretrial Memorandum.

There are eight motions before the court:

1) Defendant's Motion to Amend the Pretrial Memorandum (Docket No. 73);

2) Defendant's Motion for Summary Judgment of Non–Infringement of Patent '306 (Docket No. 78);

3) Plaintiff's Motion for Partial Summary Judgment that Any Infringement of the Patents in Suit Has Been Willful (Docket No. 64);

4) Plaintiff's Motion for Partial Summary Judgment that U.S. Patent '306 is Not Invalid for Failure to Comply with Any of 35 U.S.C. §§ 101, 102, 103 and/or 112 (Docket No. 68);

5) Defendant's Motion for Summary Judgment of Invalidity of Patent '306 under Section 102 of the Patent Statute (Docket No. 77);

6) Defendant's Motion for Summary Judgment Concerning the Application of the Doctrine of Equivalents to U.S. Patent '511 (Docket No. 74);

7) Defendant's Motion for Summary Judgment Precluding Damages for any Infringement Resulting from the Use of Chemicals Purchased from Jame Fine Chemicals, Inc. (Docket No. 75); and

8) Defendant's Motion for Summary Judgment Precluding Any Award of Damages Beyond a Reasonable Royalty (Docket No. 76).

For the reasons set forth below, this court will allow the defendant's motion to amend its Pretrial Memorandum. The court will also allow plaintiff's second motion for partial summary judgment, in part, and hold that patent '306 is not invalid as a matter of law under 35 U.S.C. §§ 101, 103 or 112. The issue of invalidity under § 102 will be left for trial. Finally, the court will allow the sixth motion listed above, defendant's motion for summary judgment concerning application of the doctrine of equivalents. All other motions for summary judgment will be denied.

## II. *FACTS*

The facts are presented in the light most favorable to the non-moving party. Both Omniglow and Unique are engaged in the business of selling chemiluminescent products. These products include glowing bracelets, glowing necklaces and night sticks. (Docket No. 66, Exhibit B). Omniglow is the owner of all right, title and interest in Patent '511, which is known as Chemiluminescent Composition.[1] (Docket No. 55 at 4). Patent '511 relates to the reaction of compositions containing an oxalate and a fluorescer with hydrogen peroxide to produce chemiluminescent blue light, which is in turn used in the production of chemiluminescent products. (Docket No. 79, Exhibit B at Column 4, Claim 1).

In addition, Omniglow is the owner of all right, title and interest in Patent '306,

---

1. The '511 Patent was originally assigned to American Cyanamid Company on January 5, 1988, on an application that was filed by inventor Anthony Koroscil. (Docket No. 66 at Exhibit C). It encompasses chemical compositions that contain fluorescers that produce a blue glow.

which is known as Chemiluminescent Solution based on Substituted Perylene.[2] The inventors of what eventually became Patent '306 first filed their invention in Belgium on June 20, 1989. This patent relates to the reaction of compositions containing a perylene dye with hydrogen peroxide to produce chemiluminescent red light, which is in turn used in the production of chemiluminescent products. (Docket No. 70, Exhibit A at Columns 5–6, Claim 1).

Between July of 1994 and June of 1998, Omniglow and Unique were parties to a distributorship agreement under which Omniglow supplied to Unique all of the chemiluminescent products that Unique sold. (Docket No. 66 at Exhibit D). Unique was aware of Omniglow's patents, and their strength was a factor in Unique's decision to enter into the agreement. (Docket No. 66 at Exhibit E). Furthermore, the patents at issue were specifically listed in the distributorship agreement, and the patent numbers were identified on Unique's packaging for the products that it purchased from Omniglow for resale. (Docket No. 66, Exhibit D at 16).

In February of 1998, Unique commenced discussions with Tianjin Dragon Chemiluminescent Tubes Co., Ltd. ("Tianjin Dragon") about the possibility of Tianjin Dragon becoming an alternate supplier for Unique. (Docket No. 66, Exhibit F at 38–40). Around that time, Craig Novak ("Novak"), Unique's president, met with On Ning ("Ning"), the general manager of Tianjin Dragon. Novak made no attempt to review the Omniglow patents prior to meeting with Ning. During the meeting, Ning assured Novak that Tianjin Dragon's products would not infringe Omniglow's patents. Novak took Ning's word for this. He did not inquire into whether Tianjin Dragon had received a formal legal opinion with regard to the Omniglow patents. (*Id.* at 40–41). Finally, Novak did not request or receive the opinion of legal counsel on whether the products offered by Tianjin Dragon would infringe the patents at issue in this suit. (*Id.* at 65, 76–77).

Thus, in assessing whether the Tianjin Dragon products would infringe the Omniglow patents, Unique relied almost entirely on Ning's assurances of non-infringement. (Docket No. 66, Exhibit G at 34–35; Docket No. 98 at ¶ 12; Docket No. 99 at ¶ 3–5). Ning's opinion of non-infringement was based on information received by her from two sources. First, Ning met with George Keyko ("Keyko") of Jame Fine Chemicals, Inc. ("Jame Fine"). (Docket No. 98 at ¶ 7). Jame Fine provided chemicals to Tianjin Dragon for at least some of the products that were manufactured for Unique. Keyko assured Ning that the products to be supplied had been studied and would not infringe the Omniglow patents. Second, Ning contacted a law firm for additional assurance that the physical design of the Tianjin Dragon products would not infringe the patents.[3] (Docket No. 98 at ¶¶ 7–11). Unique refused to buy products from Tianjin Dragon that it had reason to know might possibly infringe Omniglow's patents. (Docket No. 98 at ¶ 13; Docket No. 97 at ¶ 7–9).

Scott Brown ("Brown"), Unique's general counsel, did at some point obtain the oral advice of experienced legal counsel

---

2. The '306 Patent was originally assigned to American Cyanamid Company on June 16, 1992 by inventors Andre van Moer and Jacques Ladyjensky. (Docket 66 at Exhibit A). It encompasses chemical compositions that contain fluorescers that produce a red glow.

3. The law firm was Seidel, Gonda, Lavorgna & Monaco, P.C. in Philadelphia, Pennsylvania.

with respect to the validity of patents '306 and '511 and the possible infringement by Unique's products, although it is not clear whether this advice was given before or after the commencement of this suit. (Docket No. 97 at ¶¶ 3–5). It is clear, however, that Brown only learned the actual chemical compositions of Tianjin Dragon's products after the complaint and answer were filed with this court. (Docket No. 66, Exhibit G at 37–38; Docket No. 97 at ¶¶ 3–5).

In 1998 and 1999, Unique imported into the United States and/or sold within the United States chemiluminescent products of various colors that contained the blue fluorescer 9,10–bis(4–methoxyphenyl)–2–chloroanthracene ("methoxy fluorescer"). (Docket No. 66, Exhibit B). Omniglow claims that these Unique products infringe claims one through six of the '511 patent. (Docket No. 55 at 4). However, use of this fluorescer appears to have been minimal and was discontinued as soon as Unique learned of the chemical's possible infringement of Patent '511. (Docket No. 97 at ¶ 7).

Also, in 1998 and 1999, Unique imported into and/or sold in the United States chemiluminescent products of various colors, including pink, orange and purple, that contained a red fluorescer known by the trade name Lumogen F–300 ("Lumogen Red"), which is available from BASF in Germany. (Docket No. 66, Exhibit B). Omniglow claims that these Unique products infringe claims 1,7,8,9 and 10 of the '306 patent. (Docket No. 55 at 5).

Beginning in 1999 and continuing to the present, Unique has imported and/or sold in this country chemiluminescent products of various colors that contain either one or both of the blue fluorescers entitled 9,10–bis(4–ethoxyphenyl)–2–chloroanthracene ("ethoxy fluorescer") and 9,10–bis(4–methoxyphenyl) anthracene ("non-chlorinated methoxy fluorescer"). Omniglow contends that these products infringe claims one through six of the '511 patent. (Docket No. 55 at 4).

In January of 1999, Onmiglow's counsel reminded Unique of Omniglow's patents and identified the Unique products that, in his view, were infringing Omniglow's patents. (Docket No. 66, Exhibit H). About two months later, on March 12, 1999, Omniglow filed suit against Unique in this court.

## III. DISCUSSION

### A. Standard of Review

A motion for summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). According to the Supreme Court, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is the substantive law which identifies those facts that are material. *Id.* at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. *Defendant's Motion to Amend its Pretrial Memorandum (Docket No. 73)*

■ In the Pretrial Memorandum submitted by Omniglow, which was adopted in part by Unique, it was agreed that: "Products imported into this country by Unique and/or sold in this country by Unique that contain a red fluorescer known by the trade name 'Lumogen F–300,' available from BASF, infringe claims 1,7,8,9 and 10 of the '306 patent." (Docket No. 55 at 5, ¶ 9). Unique now seeks to rescind this admission by amending the Pretrial Memorandum to reflect its newly-formed intent to contest Omniglow's claim that its products infringe the '306 patent. (Docket No. 73 at 1).

According to Unique's counsel, his chemical expert only notified him that, in the expert's view, no infringement of the '306 patent occurred, *after* discovery had closed and the Pretrial Memorandum had been filed. (Docket No. 73 at 1 and Oral Argument). It is now Unique's position that it did not infringe the '306 patent because, even assuming that its products did contain Lumogen Red, "Unique does not manufacture, use or sell any product which falls within the scope of the claims of the '306 patent in suit." (Docket No. 73 at 1). Unique now takes the position that the patent has a fatal error—it does not, in fact, describe Lumogen Red—and that this error is apparent in Claim 1 of the patent itself. (Docket No. 73 at 1 and Oral Argument). These arguments are discussed at

greater length in the subsection dealing with Defendant's Motion for Summary Judgment of Non–Infringement of Patent '306. *See infra* Subsection C.

Plaintiff argues that Unique's motion to amend its Pretrial Memorandum is untimely and unfair. In addition, Omniglow argues that Unique's timing is suspicious, given that Unique never asserted a defense to the allegations of infringement during discovery. Omniglow points out that it has already pursued discovery, proffered its expert testimony, and assembled its case based on the assumption that Unique would not contest the allegation of infringement of the '306 patent. (*Id.* at 4).

Ordinarily the court would not permit the sort of last minute change in direction proposed by the defendant. Here, however, the change is not as dramatic as it appears, or as Omniglow suggests. Unique's counsel made it clear at oral argument that, to the extent that the '306 patent covers the compound known as Lumogen Red, then Unique still concedes that its products infringe the patent.[4] This is the position Unique has consistently taken.

Unique's change in position derives from its discovery that the patent itself contains an error—the chemical diagram contained in Claim 1, Unique says, depicts a composition that is *not* Lumogen Red. Omniglow belittles this argument, contending that the court will have no trouble construing Claim 1 to cover Lumogen Red. If Omniglow is correct, then the court will hold Unique to its original concession and will not permit Unique to contest infringement.

---

**4.** Column 3 of the '306 Patent indicates that the chemical compounds mentioned in the specification "are described in European Patent Application No. 227,980 and U.S. Pat. No. 4,845,223. The preferred compound is used under the trade name Lumogen F Rot 200 as a fluorescent dye in plastic materials with light-concentration effects. The patents also describe the preparation of analog derivatives." (Docket No. 70, Exhibit A at Column 3).

But it is fair to let Unique present the question whether the '306 patent itself contains a fatal flaw. The defendant's shift in position will not cause delay, does not require additional discovery and, with the proviso noted, will not unfairly prejudice the plaintiff. Trial is still some weeks away. For these reasons the defendant's motion to amend its Pretrial Memorandum will be allowed.

C. *Defendant's Motion for Partial Summary Judgment of Non–Infringement of Patent '306 (Docket No. 78)*

■ According to 35 U.S.C. § 271, "whoever without authority makes, sells or uses a patented invention, within the United States during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Determining whether infringement occurred requires a two step analysis. First, the patent is construed to determine the scope of the claims. Second, the claims are compared to the accused device to determine whether infringement occurred. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *see also Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc.*, 206 F.3d 1408, 1413 (Fed. Cir.2000). The first step is a question of law that is "exclusively within the province of the court." *Markman*, 517 U.S. at 372, 116 S.Ct. 1384. The second is a question of fact for the jury. *See Markman*, 517 U.S. at 384, 116 S.Ct. 1384.

■ "When construing the meaning of a claim, the court may consider both intrinsic and extrinsic evidence . . ." *Zodiac*, 206 F.3d at 1414. Intrinsic evidence includes the claims, the specification, and any prosecution history. Extrinsic evidence includes expert and inventor testimony, dictionaries, treatises, and prior art that is not referenced in the prosecution history.

*See id.* at 1414. "The court turns to extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of the asserted claim." *Id.* at 1414.

■ In determining whether infringement occurred, the fact-finder looks for evidence of literal infringement or infringement under the doctrine of equivalents. *See generally Zodiac*, 206 F.3d at 1414–1415. If the accused devise contains none of the limitations set forth in the patent claims, literal infringement of the claim cannot be found. *See Zodiac*, 206 F.3d at 1415. However, "a device that does not infringe a patent claim literally may still infringe the very same claim under the [doctrine of equivalents] if every limitation of the claim is literally or equivalently present in the accused device." *Zodiac*, 206 F.3d at 1415.

It is undisputed that Claims 2 through 14 depend on Claim 1 and that, therefore, Claim 1 must be infringed in order to infringe the '306 patent. (Docket No. 79, Exhibit C at Column 6). Defendant contends that the formula that appears in Claim 1 of the '306 Patent is not the formula for Lumogen Red, a compound which, as noted above, defendant concedes is present in its chemiluminescent products. (Docket No. 78 at 1; Docket No. 79, Exhibit C at Columns 5–6, Claim 1). Plaintiff presents the opinion of its expert that one of skill in the art would recognize the formula and structure of the compound in Claim 1 to be Lumogen Red. (Docket No. 94 at 4). Thus, plaintiff's claim that Lumogen Red is "covered precisely by the claims of the '306 patent," is an argument that supports a claim of literal infringement. (Docket No. 91 at 3).

Defendant insists that Lumogen Red is different because, unlike the formula in Claim 1, which has vertical lines extending only to the top two phenyl rings, the for-

mula for Lumogen Red has vertical lines that extend into both the top and bottom phenyl rings. (Docket No. 112 at 2). With no expert testimony to support its assertion, defendant argues that, even assuming that its products contain Lumogen Red, it does not infringe the '306 patent because "Claim 1 of the '306 Patent covers chemical compounds that are structurally different from, and which do not include, Lumogen Red." (Docket No. 78 at 3).

Given the evidence submitted thus far, particularly the opinion of plaintiff's expert, the court may easily find that the formula in Claim 1 is Lumogen Red.[5] This finding would enable a reasonable jury to conclude that Unique's products containing Lumogen Red literally infringe the '306 patent. Since there is a genuine issue of material fact about whether Lumogen Red is covered by Claim 1 of the '306 patent, defendant's Motion for Summary Judgment of Non–Infringement of Patent No. '306 will be denied.

D. *Plaintiff's Motion for Partial Summary Judgment that Any Infringement of the Patents in Suit by Unique has been Willful (Docket No. 64)*

When a potential infringer has actual notice of another entity's patent, it has "an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe." *Minnesota Mining and Manufacturing Co. v. Johnson and Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1580 (Fed.Cir.1992). Nonetheless, the receipt of competent legal advice "is only one factor to be considered, and an opinion of counsel does not guarantee against a finding of willfulness." *Id.* In making this determination, the court

must look to the totality of the circumstances. *See Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1579 (Fed. Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987), *citing King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 867 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986).

A finding of willfulness is significant because a "finding of willful infringement meets the criteria of [an] 'exceptional case.'" *Brooktree Corporation v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1582 (Fed.Cir.1992), *quoting Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1329 (Fed.Cir.1987). Under the patent statute, "the court in exceptional cases may award reasonable attorney's fees to the prevailing party." 35 U.S.C. § 285.

Plaintiff argues that the undisputed facts of record clearly demonstrate that any infringement of its patents by Unique has been willful. (Docket No. 65 at 9). It is evident from the record that Unique had actual notice of the Omniglow patents and, therefore, had a duty to exercise reasonable care to avoid their infringement. Defendant, of course, disputes that the patents were infringed. Looking at the totality of the circumstances in the context of a motion for summary judgment, it is not at this point clear that defendant's infringement could be described as "willful."

The evidence shows that Novak relied on Ning's assurances that the Omniglow patents would not be infringed by the Tianjin Dragon products. Ning herself relied on the assurances of Keyko from Jame Fine, who was personally known to Ning to have extensive experience in the chemiluminescent novelty products industry and who informed her that Jame Fine had

---

5. The determination of the scope of the claim will be made by the court at trial, per *Mark-*

*man v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

114

studied the Omniglow patents. (Docket No. 98 at ¶ 8). The evidence shows, furthermore, that Ning contacted a law firm for legal advice on whether the Tianjin Dragon products infringed the Omniglow patents. (Docket No. 98 at ¶ 9). Lastly, there is some ambiguous evidence that Unique's general counsel, Scott Brown, received an opinion of outside counsel with regard to the Omniglow patents, though it is not clear when he did this.

The law with respect to the finding of "willfulness" is less than clear. In *Biotec,* the Federal Circuit found that reliance on the technological expertise of an advisor who was an employee of the supplier *was* evidence of due care. *See Biotec Biologische Naturverpackungen GmbH & Co. KG, v. Biocorp, Inc.,* 249 F.3d 1341, 1355–356 (Fed.Cir.2001). In contrast, *Minnesota Mining* found that reliance on the oral opinion of in-house counsel, who obtained his information from the president of the supplier rather than from an independent expert, was not reasonable because the supplier's president had an inherent bias. *See Minnesota Mining And Manufacturing Co. v. Johnson and Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1580–581 (Fed.Cir.1992). The court also emphasized that oral opinions carry less weight and are not favored. *Id.* It is clear that the failure to obtain legal advice, although relevant, is insufficient for a finding of "willfulness," whereas an opinion of counsel cannot "guarantee against a finding of willfulness." *Minnesota Mining,* 976 F.2d at 1580; *see also Biotec,* 249 F.3d at 1356 (finding that "[f]ailure to obtain an opinion of counsel is relevant evidence, but does not automatically require a finding of willful infringement"); *Kloster Speedsteel,* 793 F.2d at 1579 (finding that although it is an important consideration, "not every failure to seek an opinion of competent counsel will mandate an ultimate finding of willfulness").

Plaintiff makes a very strong argument, but in this uncertain legal and factual environment it is prudent to allow these issues to take shape at trial. Plaintiff's motion for partial summary judgment that any infringement of the patents in suit by Unique has been willful will therefore be denied.

E. *Plaintiff's Motion for Partial Summary Judgment that U.S. Patent '306 is not Invalid for Failure to Comply with 35 U.S.C. §§ 101, 102, 103 and/or 112, and Defendant's Motion for Summary Judgment of Invalidity of Patent '306 under 35 U.S.C. § 102 (Docket Nos. 68 and 77)*

In its Answer, defendant pled that the '306 Patent was invalid because it did not comply with one or more of 35 U.S.C. §§ 101, 102, 103 and/or 112. (Docket No. 4 at ¶ 17). Plaintiff argues that, with the closure of discovery, defendant can offer no evidence to support a claim for invalidity under any of these four provisions. Unique does not disagree with respect to Section 103; thus, plaintiff's motion will be allowed with respect to 35 U.S.C. § 103. However, Unique opposes Omniglow's arguments as to the other three sections, contending (1) that disputed issues of fact preclude summary judgment with regard to Sections 101 and 112, and (2) that Unique itself is entitled to summary judgment with respect to Section 102. The court will address these arguments in turn.

1. *Sections 101 and 112*

According to Section 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and re-

quirements of this title." 35 U.S.C. § 101. Section 112 adds that:

> The specification [of the patent] shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
>
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112.

Under Section 101, patents have been invalidated when the subject matter claimed is lacking in usefulness, or "utility." *E.g. Raytheon Company v. Roper Corporation*, 724 F.2d 951 (Fed.Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984). Whether utility is present is a question of fact for the jury. *See Raytheon*, 724 F.2d at 956. The first step in making a utility determination is to define the invention through the interpretation of the claims, a task that, as noted above, is reserved to the court. *See Raytheon*, 724 F.2d at 956. If the claims contain incorrect ideas, they are invalid. *See Raytheon*, 724 F.2d at 956. This is because:

> [t]o make out a claim for a ... process in which these erroneous ideas are incorporated is to make out a process ... which does not in point of fact exist within the invention.... [This] error cannot be overlooked when the misconception is embodied in the claim.

*Raytheon*, 724 F.2d at 956, *quoting Linde Air Products Co. v. Graver Tank Mfg. Co.*, 86 F.Supp. 191, 197 (N.D.Ind.1947), *rev'd* 167 F.2d 531, 536–37 (7th Cir.1948), *aff'd*

*Graver Mfg. Co. v. Linde Co.*, 336 U.S. 271, 277–79, 69 S.Ct. 535, 93 L.Ed. 672 (1949).

Under Section 112, patents can also be invalidated for lack of "enablement," for failure to disclose the best mode for carrying out the invention, and for indefiniteness. *E.g. Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed.Cir.1997), *cert. denied*, 522 U.S. 963, 118 S.Ct. 397, 139 L.Ed.2d 310 (1997) (enablement); *Dana Corporation v. IPC Limited Partnership*, 860 F.2d 415, 418 (Fed. Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989) (best mode); *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1581 (Fed.Cir.1996) (indefiniteness). "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech*, 108 F.3d at 1365, *citing In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir.1993). Whether the specification is enabling is a legal question. *See Genentech*, 108 F.3d at 1365. Enablement must exist for the invention as claimed. A design or process that is impossible obviously cannot be "enabled" and, thus, "a claim containing a limitation impossible to meet may be held invalid under Section 112." *Raytheon*, 724 F.2d at 956. In addition, "when a claim requires a means for accomplishing an unattainable result, the claimed invention must be considered inoperative as claimed and the claim must be held invalid under either §§ 101 or 112 of 35 U.S.C." *Raytheon*, 724 F.2d at 956.

"The statutory presumption of validity imposes the burden of persuasion on one who attacks the validity of a patent." *RCA Corporation v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1443 (Fed.Cir.1984), *cert. dismissed*, 468 U.S. 1228, 105 S.Ct. 32, 82 L.Ed.2d 923 (1984); *see also* 35 U.S.C. § 282. Defendant ar-

gues that the 306 Patent is invalid under Sections 101 and 112 because it contains a fatal error in the claims. This argument suggests that the patent is invalid both for lack of utility and for lack of enablement. (Docket No. 95 at 16). Defendant argues that the patent lacks these qualities because it contains a formula in Claim 1 that does not cover Lumogen Red, even though the specification refers to the chemical compound to be utilized as Lumogen Red. (Docket No. 70 at Column 3, line 25).

Plaintiff counters that defendant's evidentiary submission on this issue is insufficient. This court agrees. In determining whether a patent is invalid under Sections 101 and 112, the claims must first be construed, a matter that is reserved to the courts. "When construing the meaning of a claim, the court may consider ... extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of the asserted claim." *See Zodiac*, 206 F.3d at 1414. Given the technical nature of the formula in Claim 1, extrinsic evidence is necessary for this court to construe the meaning of the claims. However, as was noted above, no expert testimony has been submitted by defendant to support its assertion that the chemical formula in Claim 1 does not correspond to Lumogen Red. Plaintiff, in contrast, submitted the report of its expert in support of its argument that a person skilled in the art would recognize the formula in Claim 1 to be Lumogen Red. Given the weakness of Unique's evidentiary submissions, this court finds that defendant has failed as a matter of law to provide sufficient evidence to support its burden of proof on the invalidity of the '306 patent under Sections 101 and 112. As such, Plaintiff's Motion for Partial Summary Judgment will be allowed with respect to Sections 101 and 112.

2. *Section 102*

Under § 102, a person is entitled to a patent unless:

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ...

35 U.S.C. § 102. According to subsections (a) and (b), a person is not entitled to a patent if the invention was "anticipated." "Anticipation is established only when a single prior art reference discloses, expressly or under principles of inherency, each and every element of a claimed invention." *RCA Corporation v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1443 (Fed.Cir.1984); *see also Carella v. Starlight Archery and Pro Line Company*, 804 F.2d 135, 138 (Fed.Cir.1986). As noted above, there is a statutory presumption that the patent is valid, and the burden of persuasion lies with the party who attacks its validity. *See Carella*, 804 F.2d at 138; *see also RCA Corp.*, 730 F.2d at 1443. Moreover, "[f]acts establishing anticipation ... must be proven by clear and convincing evidence." *Carella*, 804 F.2d at 138; *see also RCA Corp.*, 730 F.2d at 1444. Unique argues that the '306 Patent is invalid under § 102 because "chemiluminescent solutions of the type asserted to infringe the '306 patent were known in the United States and offered for sale in the United States prior to the relevant date of the '306 patent." (Docket No. 77 at 1).[6]

6. The argument that the solutions used in the '306 patent were "known in the United

■ First, Unique argues, and at least for purposes of the motion, Omniglow does not appear to dispute, that the date of "invention," which is the crucial date for determining anticipation under Section 102(a), is June 20, 1989, the date on which a patent application for the European equivalent to the '306 patent was submitted in Belgium.[7]

Second, Unique argues, and Omniglow does not appear to dispute, that the crucial date for determining anticipation under Section 102(b) is June 19, 1989, one year before the U.S. application filing date.

Third, Unique submits an affidavit from a Shiro Harada, president of Lumica Corporation, a dealer in chemiluminescent products located in Japan, and an invoice of another company, Tokyo Kagaku Hakko, Inc.(TKH), dated June 19, 1989, both purporting to show that products containing Lumogen Red "or its chemical equivalent" were known in the United States prior to June 20, 1989 and on sale in the United States prior to June 19, 1989.

Fourth, Unique has offered statements from Toshio Yasanuga ("Yasanuga") and Kazuyoshi Machida ("Machida") in support of its argument that the patented products were sold in the United States prior to June 19, 1989. Both these affiants rely on the June 19, 1989 TKH invoice and on a supposed follow-up letter from the president of TKH specifying the colors of certain products being shipped.

■ Taken in whole or part, none of this evidence is sufficient to prove invalidity by clear and convincing evidence as a matter of law for purposes of Fed.R.Civ.P. 56. The crucial passages of the Harada affidavit are not offered based on his personal knowledge. Moreover, the indefinite reference to Lumogen Red "or its chemical equivalent" leaves the record unclear, both as to what precisely the affiant means and the basis of his knowledge. The plaintiff has offered the deposition testimony of the supposed recipient of the June 19, 1989 TKH invoice, who stated under oath that he could not remember ever receiving it or the supposed follow-up letter. The authenticity of the invoice and letter is not established by any competent evidence. Finally, the statements of Yasunaga and Machida are not based on personal knowledge and are further inadmissible because they are unsworn.

Having determined that the evidence of record is insufficient to justify a finding of invalidity under Section 102(a) or 102(b) at this stage, it is tempting to rely on this insufficiency to grant Omniglow's corresponding motion seeking a pretrial determination that Unique may not pursue any defense of invalidity based on Section 102 at trial. The court will not do so. The record, though insufficient to justify judgment for Unique on this point, is enough to generate a dispute of fact on the issue, or

---

States" is governed by § 102(a), whereas the argument that the solutions were "offered for sale" in the United States is governed by § 102(b). An *offer to sell* is sufficient to find that a product was on sale prior to the crucial date for purposes of § 102(b). *See KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed.Cir.1993).

7. 35 U.S.C. § 119 states that where an application for a patent is filed in this country within one year of a submission of an equiva-

lent patent application in a foreign country, the U.S. application will be treated as if it had been filed in the United States on the date it was filed in the foreign country.

It seems somewhat arbitrary that counsel have agreed that the date of "invention" for purposes of § 102(a) is the date on which the patent application was filed in Belgium, which must in some sense actually postdate the actual invention. However, since counsel have agreed, the court will use the June 20, 1989 date for its analysis.

at least to leave the court without a sufficiently settled conviction on the matter to justify judgment for Omniglow. The defense may be developed at trial, and the court will re-visit the issue then. Neither side is entitled to judgment at this stage.

F. *Defendant's Motion for Summary Judgment Concerning the Application of the Doctrine of Equivalents to Patent '511 (Docket No. 74)*

 As was noted above, "[a] device that does not infringe a patent claim literally may still infringe the very same claim under the [doctrine of equivalents] if every limitation of the claim is literally or equivalently present in the accused device." *Zodiac,* 206 F.3d at 1415. The purpose of the doctrine of equivalents is to prevent "an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Zodiac,* 206 F.3d at 1416, *quoting Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 1424 (Fed. Cir.1997). "For a claim limitation to be 'equivalently present' in an accused device, there must be only 'insubstantial differences' between the missing claim limitation and corresponding aspects of the accused device." *Zodiac,* 206 F.3d at 1415, *citing Hilton Davis Chemical Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 1517– 518 (Fed.Cir.1995), *rev'd on other grounds,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Even though determinations of equivalence are reserved for the jury, district courts are obligated to grant summary judgment if, given the evidence, it would be unreasonable for a jury to determine that an element of the accused device is the equivalent of a claim limitation in the patented product. *See Warner–Jenkinson v. Hilton Davis Chemical Co.,* 520 U.S. 17, 39 n. 8, 117 S.Ct.

1040, 137 L.Ed.2d 146 (1997); *see also Zodiac,* 206 F.3d at 1415.

The doctrine of equivalents balances the right of the patentee to fully enjoy the benefits of his patent against the right of the public to have fair notice of the patent's scope. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 234 F.3d 558, 564 (Fed.Cir.2000), cert. granted, —— U.S. ——, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001). If applied too broadly, the doctrine of equivalents "conflicts with the definitional and public-notice functions of the statutory claiming requirements." *Warner–Jenkinson Co.,* 520 U.S. at 29, 117 S.Ct. 1040. In order to prevent the doctrine of equivalents from defeating this function, the courts apply the doctrine of prosecution history estoppel. *Festo Corp.,* 234 F.3d at 564.

 "Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application." *Festo Corp.,* 234 F.3d at 564, *citing Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,* 170 F.3d 1373, 1376. (Fed. Cir.1999). This doctrine extends to subject matter surrendered during actions initiated by the patentee, "including claim amendments and arguments before the Patent Office [that were made to obtain allowance of the patent claims at issue]." *Festo Corp.,* 234 F.3d at 564, *citing Pharmacia,* 170 F.3d at 1376–77. Whether the amendments or arguments were made voluntarily is of no consequence. *See Festo Corp.,* 234 F.3d at 568 (finding that a voluntary claim amendment that narrows the scope of a claim gives rise to prosecution history estoppel and that this determination is consistent with the doctrine of argument-based estoppel—"arguments made voluntarily during prosecution may give rise to prosecution history estoppel if

they evidence a surrender of subject matter").

■ Whether the doctrine of prosecution history estoppel applies so as to limit the doctrine of equivalents is a question of law. *See Pharmacia & Upjohn Co.,* 170 F.3d at 1376. For estoppel to apply, the assertions, arguments or claim amendments must "evince a clear and unmistakable surrender of subject matter." *Id.* at 1377. Furthermore, in determining the subject matter that has been relinquished, the court must apply an objective test. The relevant inquiry ·under this test is "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* at 1377, *citing Cybor Corp. v. FAS Techs.,* 138 F.3d 1448, 1457 (Fed.Cir.1998).

■ In this motion, Unique seeks a ruling that those products that incorporate the blue fluorescers 9,10–bis(4–ethoxyphenyl)–2–chloroanthracene ("ethoxy fluorescer") and 9,10–bis(4–methoxyphenyl) anthracene ("non-chlorinated methoxy fluorescer") do not infringe Claim 1 of the '511 patent under the doctrine of equivalents. (Docket No. 74). Claim 1 of the '511 patent states:

> A composition to be reacted with hydrogen peroxide to provide chemiluminescent blue light, said composition containing the ingredients (1) an oxalate compound and (2) 9,10–bis(4–methoxyphenyl)–2–chloroanthracene ["methoxy fluorescer"], the amounts of said ingredients being such as to provide visible blue light.

(Docket No. 79 at Exhibit B, Column 4, Lines 15–24). It is undisputed that Claim 1 is the only independent claim among those claims that pertain to the production of chemiluminescent blue light. Through the testimony of its expert, Omniglow argues that Unique's use of the ethoxy fluorescer or the non-chlorinated methoxy fluorescer in its products infringes Claim 1 of the patent under the doctrine of equivalents. (Docket No. 90 at 2).

The analysis must begin with a determination whether the prosecution history indicates any surrender of subject matter. On June 1, 1987, the applicant filed an amendment to his patent application. (Docket No. 79 at Exhibit J). The remarks, which began on the second page of the amendment, indicated that the amendment was submitted in response to the patent Examiner's decision to reject claims one through fourteen as unpatentable under 35 U.S.C. § 103 because they were obvious in light of disclosures in the earlier filed Maulding patent. The relevant portions of the amendment state as follows:

> The instant invention is directed to compositions and methods for the use thereof in the creation of chemiluminescent light. The novel compositions of the present invention employ 9,10–bis(4–methoxyphenyl)–2–chloroanthracene ["methoxy fluorescer"] as the fluorescer. This fluorescer has been found to increase the output of blue light in the chemiluminescent system.... It is strenuously urged that these compositions and methods of use are not disclosed, taught, or suggested by Maulding.... What applicant has discovered, however, and what is not obvious from the teaching of Maulding, is that one specific fluorescer, i.e., [methoxy fluorescer], is capable of producing blue, chemiluminescent light of increased light output than other known blue fluorescers. Such a result is completely unexpected from a perusal of Maulding.

(Docket No. 79, Exhibit J, at 2–3). Plaintiff insists that the foregoing statements are a *description* of the invention, not an attempt to narrow the scope of the claims. Furthermore, plaintiff insists that the

ethoxy fluorescer, which only became known *after* the '511 patent date, cannot logically be included in the phrase "other *known* blue fluorescers." (Docket No. 79, Exhibit K, Column 3 at Example 1) (emphasis added).

The argument that the applicant's amendment was merely descriptive is unpersuasive for two reasons. First, a review of Claim 1 demonstrates that a *specific* fluorescer, the methoxy fluorescer, is described, not a category of fluorescers. Second, in the application amendment, the same fluorescer is used to describe the invention and to distinguish it from previous inventions. The Federal Circuit mandated the application of prosecution history estoppel in a similar case where a specific ketone solvent was described in claim 1, not a category of solvents, and where the Statement of Art filed with the patent office defined the invention using the *same* base-solvent combinations that were found in the first claim. *Tanabe Seiyaku Co. v. United States ITC,* 109 F.3d 726, 732 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1027, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997). In reaching its decision, the *Tanabe* court also found relevant that "the prosecution history [suggested] that other ketone solvents may result in lower yields than the claimed solvents." *Id.* Similarly, Omniglow's application amendment states clearly that "one specific fluorescer, i.e. [methoxy fluorescer], is capable of producing blue, chemiluminescent light of increased light output than other known blue fluorescers." (Docket No. 79, Exhibit J at 2–3).

Turning back to the '511 patent and the application amendment, this court must conclude that any Omniglow competitor would reasonably believe that the assertions in the amendment "evince a clear and unmistakable surrender of subject matter," namely, a surrender of any intent

to extend the patent claims to other blue fluorescers. *Pharmacia,* 170 F.3d at 1377. This belief would be confirmed by the language of Claim 1 of the patent. Moreover, the court cannot agree that the language surrenders only those other blue fluorescers that were known at the time the amendment was filed. (Docket No. 79, Exhibit K). The amendment specifically identifies *one* novel composition, the "methoxy fluorescer" in order to "strenuously" urge the lack of applicability of the prior art. The language then proceeds to add, merely descriptively, that the specified "methoxy fluorescer" produces increased light output better than "known" fluorescers. This sentence can hardly be interpreted to give Omniglow license under its patent to assert a claim of infringement against any and all non-specified fluorescers that might become known in the future. The amendment specifies one fluorescer to distinguish the prior art, and Omniglow must live with that limitation.

Accordingly, this court finds that the patent's prosecution history bars Omniglow from claiming that Unique's use of the ethoxy fluorescer and the non-chlorinated methoxy fluorescer infringes Claim 1 of the '511 patent under the doctrine of equivalents. There is therefore no need to continue with the analysis. Defendant's motion will be allowed.

G. *Defendant's Motion for Summary Judgment Precluding Damages for any Infringement Resulting from the use of Chemicals Purchased from Jame Fine (Docket No. 75)*

Unique asserts that Omniglow cannot recover damages that arise out of the use of chemicals purchased from Jame Fine Chemicals, Inc. ("Jame Fine") because Omniglow has already been fully compensated under the settlement reached with Jame Fine in prior litigation. Jame Fine,

as noted above, is Tianjin Dragon's supplier.

If a patent owner brings a successful infringement suit, he may recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284; *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed. Cir.1990). The Supreme Court has interpreted Section 284 of the patent statute to provide full compensation for injuries caused by the infringing use of the patent. *See Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1546 (Fed.Cir.1995).

 Under this interpretation, patent infringers are jointly and severally liable to the patent owner for the full amount of damages. *See Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 500, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) (finding that contributory infringers are liable as a species of joint-tortfeasor). That contributory infringers are potentially liable is made clear by Section 271(c) of the patent statute which states:

> Whoever sells a component part of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patent process, constituting a material part of an invention, knowing the same to be especially made or adapted for use in an infringement of such patent ... shall be liable as a contributory infringer.

35 U.S.C. § 271(c). The remedy of "full compensation" is limited by the principle that full compensation from one infringer prevents the patent owner from recovering against joint-infringers. *See Aro Mfg.*, 377 U.S. at 512, 84 S.Ct. 1526; *see also Amstar Corporation v. Envirotech Corporation*, 823 F.2d 1538, 1549 (Fed.Cir.1987) (finding that patent owner, who had been awarded full compensation from sellers of infringing products, could not now seek recovery, in the form of an injunction, from buyers of the products); 5 Chisum, *Patents* § 20.03[7][b][iii] (2001) ("in a number of circumstances, the courts have held that actual recovery—through payment of a judgment or through a settlement—will relieve other infringers because the patent owner has already been fully compensated"). However, when full compensation has *not* been recovered from one infringer, the patent owner may seek compensation from joint infringers until he has received the full amount. *See Water Technologies Corp. v. Calco Ltd.*, 850 F.2d 660, 668 (Fed.Cir.1988); *see also* 5 Chisum, *Patents* § 20.03[7][b][iii] (2001) ("entry of judgment alone against one infringer will not relieve other related infringers from liability").

 It is well established that, where there is a release of liability under a settlement agreement, non-party joint-infringers are only released if it was the *intent* of the parties to the agreement to release them. *See generally Aro Mfg.*, 377 U.S. at 501, 513, 84 S.Ct. 1526; *see also,* 5 Chisum, *Patents* § 20.03[7][b][v] (2001). However, "[a]ssuming no intent to release, amounts paid under a settlement agreement may nevertheless diminish the liability of other infringers and may trigger the full compensation rule." 5 Chisum, *Patents* § 20.03[7][b][v] (2001).

Unique contends that the undisputed facts of record demonstrate that (1) the products it sold containing the blue fluorescers were acquired from Tianjin Dragon, which in turn got them from Jame Fine Chemicals; (2) the products it sold containing Lumogen Red were also acquired from Tianjin Dragon via Jame Fine Chemicals; and (3) the settlement agreement between Omniglow and Jame Fine established an on-going business relationship between them for the purpose of compensating Omniglow fully for any violation of its patents. (Docket No. 75 at 3–5).

The background to this argument, which appears undisputed, is this. Omniglow sued Jame Fine on March 23, 1999 claiming infringement of three Omniglow patents, including patents '511 and '306. (Docket No. 79, Exhibit F at 1). Unique argues that the relevant provisions of the settlement agreement establish that a favorable business relationship was created to fully compensate Omniglow for Jame Fine's alleged infringement.

A fair reading of the agreement fails to support Unique's argument. It is evident from the agreement and the deposition testimony of Fred Kaplan ("Kaplan"), Omniglow's president and CEO, that Omniglow and Jame Fine executed an operating agreement to create a limited liability company and that this agreement is still alive today. (Docket No. 79, Exhibit F at ¶2; Exhibit G at 30). It is also evident that both parties desired that Jame Fine, to some extent, compensate Omniglow for the alleged patent infringement. (Docket No. 79 at 2). The evidence is not clear, however, that this business relationship would be sufficient to fully compensate Omniglow. In fact, Kaplan testified that "to assign a specific value to the business transaction which was created which would refer back to the damages ... that Omniglow had incurred would have been very difficult." (Docket No. 79, Exhibit G at 29–30, Lines 25–4). Moreover, Omniglow released Jame Fine, its officers, directors, agents and employees from all claims, including claims of infringement that arose prior to April 1, 1999, but explicitly declined to release Jame Fine's customers. (Docket No. 79, Exhibit F at ¶6). Hence, there is no indication that Omniglow was fully compensated for the infringement, nor is there any evidence of intent to release customers of Jame Fine from liability. *See Rite–Hite Corp.,* 56 F.3d at 1538; *see also Aro Mfg.,* 377 U.S. at 501, 513, 84 S.Ct. 1526; 5

Chisum, *Patents* § 20.03[7][b][v] (2001). The percentage of full compensation that Omniglow has received is also unclear.

Even if defendant could prove that Omniglow was fully compensated under the settlement agreement or that the agreement released Jame Fine's customers from liability, its argument would nonetheless fail because it is disputed whether the relevant chemical compounds used in Unique products actually were supplied by Jame Fine. Defendant proffers the declaration of Ning in support of its assertion that the methoxy fluorescer, ethoxy fluorescer, and Lumogen Red that are incorporated in Unique products were acquired by Tianjin Dragon from Jame Fine only. (Docket No. 82 at ¶¶5 & 7). However, it is unclear whether Ning, who is the general manager of Tianjin Dragon, is qualified to testify with regard to this information. Plaintiff argues that Ning's declaration is irrelevant because of her lack of expertise and because it is uncorroborated by supporting documents. (Docket No. 84 at 7). Unique does submit excerpts from its purchase and use records as well as the sale records of Jame Fine, but these documents are inconclusive with regard to the amount of blue and red Jame Fine solution that was used in the production of Unique products. (Docket No. 93, Exhibit A). At most, the records demonstrate that Jame Fine manufactured blue and red solution for Tianjin Dragon and that Tianjin Dragon used at least some of the Jame Fine solution in the production of at least some of Unique's products. This is not nearly enough to support summary judgment. Defendant's motion on this point will therefore be denied.

H. *Defendant's Motion for Summary Judgment Precluding any Award of Damages Beyond Reasonable Royalty (Docket No. 76)*

As was mentioned above, a successful patent owner may recover

"damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284; *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed. Cir.1990). The patent owner has the burden of proof on damages. *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir.1994), *cert. denied*, 514 U.S. 1032, 115 S.Ct. 1392, 131 L.Ed.2d 244 (1995). Lost profits are awarded if the patent owner can prove a causal relation between the infringement and the lost sales. In other words, the owner must show that " 'but for' the infringement, it would have made the infringer's sales." *Id.* "But for" causation can be established by fulfilling the requirements of the four prong test in *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir.1978). To recover lost profits, the patent owner most show:

(1) a demand for the patented product, (2) an absence of acceptable non-infringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patent owner would have made.

*Kearns*, 32 F.3d at 1551.

The second prong makes clear the obvious point that the existence of competitors with non-infringing substitutes precludes a finding of causation and, hence, an award of lost profits. However, causation can be found despite an alternative source of supply "if that source is an infringer or puts out a non-infringing product that is an unacceptable alternative, or has insignificant sales." *Micro Motion*, 894 F.2d at 1322.

Turning to the case before the court, it is undisputed that there exists both demand for the patented products and marketing and manufacturing capability to exploit the demand. Furthermore, plaintiff's expert, Christopher A. Vellturo ("Vellturo") has found that Omniglow is entitled to lost profits in the amount of $1,563,205 (pre-interest) as a result of Unique's allegedly infringing sales through the year 2000. (Docket No. 55, Exhibit 3 at 1–6). Hence, the only issue in dispute is whether Omniglow can offer evidence that, if believed, would demonstrate the absence of an acceptable, non-infringing substitute.

Unique argues, through the declaration of its president, Craig Novak, that acceptable, non-infringing substitutes are available from other suppliers such as Lumina Corporation and Xiamen Long Afterglow Company, Ltd. (Docket No. 81 at ¶¶ 5–7). In addition, defendant insists that acceptable non-infringing substitutes are available in the form of those products that use the non-chlorinated methoxy fluorescer.

In his declaration, Novak states that:

[a]s part of [Unique's] business records in evaluating suppliers, [Unique has] received confidential information from suppliers of chemiluminescent products attesting that their products do not contain the chemicals asserted to infringe the Omniglow patents. These companies include [Lumina Corporation and Xiamen Long Afterglow Company].

(Docket No. 81 at ¶¶ 5–7). It is questionable whether Novak has the personal knowledge that is necessary for this testimony to survive the hearsay exclusion. Fed.R. of Evid. 602 and 801(c). *But see*, Fed.R. of Evid. 803(6).

Unique also proffers the testimony of Kaplan, Omniglow's president and CEO, in support of its assertion that acceptable, non-infringing substitutes exist. Specifically, Kaplan testifies that some of the red and blue products manufactured by Tianjin Dragon were made with non-infringing fluorescers. (Docket No. 115 at 39, line 20 – 41, line 2). In addition, he mentions

Victor World as a company employed in the manufacture of products that utilized a non-infringing blue dye. (Docket No. 115 at 89, line 21 through 90, line 20).

Plaintiff responds by proffering the testimony of Vellturo, its economic expert, who opines that there is an absence of acceptable non-infringing substitutes in the marketplace for products that incorporate the technology of patents '306 and '511. Vellturo testifies that, besides sales made by Omniglow and Unique, the quantity of glowstick sales by other companies in the party supply market is minimal. (Docket No. 93 at 41, line 18 through 42, line 2). Furthermore, even though Vellturo declines to expressly characterize other products in the market as "infringing," he does characterize them as unacceptable products for the party supply industry. More specifically, he states, "[the products produced by the other companies] have not captured significant sales into this industry .... these are products that have not had any significant impact in the marketplace." (Docket No. 115 at 42, lines 3–21).

Based on the evidence proffered by Unique, a jury could find that non-infringing substitutes exist. However, a jury could also conclude, from the expert report of Vellturo, that the substitutes mentioned by Unique are unacceptable alternatives and that the companies that produce these products have insignificant sales. *See Micro Motion,* 894 F.2d at 1322. There is therefore a genuine issue of material fact, namely whether there are *acceptable,* non-infringing substitutes for the Omniglow patents. Defendant's motion will therefore be denied.

## IV. *CONCLUSION*

For the reasons set forth above, defendant's Motion to Amend is hereby ALLOWED. Plaintiff's Motion for Partial Summary Judgment that U.S. Patent '306

is Not Invalid is ALLOWED, in part, as to §§ 101, 103 and 112, and defendant's Motion for Summary Judgment Concerning Application of the Doctrine of Equivalents to U.S. Patent '511 is also ALLOWED. All other motions for summary judgment are DENIED.

A separate order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum, defendant's Motion to Amend (Docket No. 73) is hereby ALLOWED. Plaintiff's Motion for Partial Summary Judgment that U.S. Patent '306 is Not Invalid (Docket No. 68) is ALLOWED, in part, as to 35 U.S.C. §§ 101, 103 and 112, and defendant's Motion for Summary Judgment Concerning Application of the Doctrine of Equivalents to U.S. Patent '511 (Docket No. 74) is also ALLOWED. All other motions for summary judgment (Docket Nos. 64, 75, 76, 77 & 78) are DENIED.

It is So Ordered.